IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.    No. CR 15-2990 RB

NORMA PATRICIA RIVERA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Ms. Rivera's Motions for Compassionate Release, filed on June 25, 2021, and September 7, 2021. (Docs. 38; 47.) Having reviewed the parties' submissions, the record, and the applicable law, the Court finds the motion is not well-taken and should be **DISMISSED** in part and **DENIED** in part.

**I.**    **Background**

On October 15, 2015, Ms. Rivera pled guilty to a two-count Indictment charging distribution of 50 grams and more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (*See* Docs.13; 21–23.) On May 26, 2016, the Court sentenced Ms. Rivera to 120 months imprisonment. (Docs. 27–28.)

Ms. Rivera has served approximately 79 months of her sentence. With good-time credits, her anticipated release date is November 6, 2023. *See* Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Dec. 20, 2021). She now moves the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce her sentence due to extraordinary family circumstances and due to the COVID-19 pandemic. (*See* Doc. 47.)

**II.     Discussion**

Ms. Rivera seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." Prior to the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [she] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). Ms. Rivera filed a request seeking compassionate release due to her family situation with the warden of FCI Dublin on May 5, 2021, and the warden did not respond. (*See* Docs. 38 at 11; 47 at 6.) The Government concedes that she has exhausted her administrative remedies. (*See* Doc. 53 at 3.)

Ms. Rivera asserts that extraordinary and compelling circumstances exist due to the incapacitation of her children's father. (Doc. 47 at 6–8.) She also argues that her medical condition—obesity—puts her at risk for severe illness from COVID-19. (*Id.* at 8–10.) The Government contends that her husband is not incapacitated and that other adults are available to care for her children, and that she is vaccinated, detracting from her argument regarding COVID-19. (*See* Doc. 53 at 11–15.)

**A.     Ms. Rivera did not exhaust the issue of whether her medical condition presents an extraordinary and compelling reason warranting release.**

Ms. Rivera contends that because she is obese, she is at greater risk for serious illness from COVID-19. (Doc. 47 at 8–10.) Though the Government does not raise exhaustion, the Court notes

that Ms. Rivera's request to the warden did not include this reason as a basis for compassionate release. (*See* Doc. 38 at 11.) Thus, she failed to exhaust the issue and the Court will dismiss the motion in part. *See United States v. Zamarripa*, No. CR 18-2757 RB, 2020 WL 3035226, at *2 (D.N.M. June 5, 2020) (treating "Section 3582(c)(1)(A)'s exhaustion requirement as jurisdictional").

Even if she had exhausted, the Court would deny the motion on this issue. Ms. Rivera, with a body mass index (BMI) of 36,[1] has Class 2 obesity. *See* Adult Body Mass Index, CDC, https://www.cdc.gov/obesity/adult/defining.html (last reviewed June 7, 2021). The Government contends, though, that because Ms. Rivera received both doses of the Pfizer COVID-19 vaccine in 2021, extraordinary and compelling circumstances do not exist due to the pandemic. (Doc. 53 at 13; *see also* Doc. 47-5 at 22.) Finally, Victorville Medium II FCI, where Ms. Rivera is currently incarcerated, has 429 inmates who have recovered from COVID-19 and currently has only one positive inmate case. *See* COVID-19 Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 20, 2021). The Government argues that under these circumstances, the risk presented by her obesity does not constitute extraordinary and compelling circumstances that qualify for potential release in the face of the pandemic. (Doc. 53 at 13.) The Court agrees that Ms. Rivera's health issue does not rise to an extraordinary and compelling reason for a sentence reduction at this time.

**B.     Ms. Rivera has not established that extraordinary circumstances warrant compassionate release due to the health of her children's father.**

Ms. Rivera argues that her husband, who has a serious heart condition, uncontrolled diabetes, and a history of strokes, "faces the very real prospect of heart failure and death," and it

---

[1] The Court used Ms. Rivera's height (67 inches) and weight (234 lbs) as stated in her declaration to calculate a BMI of 36. *See Body Mass Index Table 1*, NIH, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmi_tbl.htm (last visited Dec. 20, 2021). (*See also* Doc. 47-2 at 2.)

is therefore "quite critical for the health and safety of [her] children that [she] be released to provide for their care and well-being." (Doc. 47 at 7.) She submits a declaration in support of her motion. (*See* Doc. 47-2.) She explains that four of her children, ages 27, 18, 16, and 11 years, live with her husband, Hector Perez. (*Id.* ¶ 6.) Her 27-year-old son underwent brain surgery several years ago and "continues to suffer from ongoing neurological difficulties and pain." (*Id.* ¶ 7.) Her 16- and 11-year-old children are in school. (*See* Doc. 47 at 2.) Her husband is "medically fragile in that he has a history of strokes, suffers from uncontrolled diabetes, severe heart disease and limited kidney function as well as a collapsed lung." (*Id.* (citations omitted); *see also* Docs. 47-2 ¶ 8; 50-1.) "He is presently awaiting surgery to attempt to resolve two blocked arteries." (Doc. 47 at 2 (citing Doc. 47-2 at 2).) She argues that due to her husband's health, she must be released to care for the children. (*Id.* at 7.)

The Sentencing Commission has defined "extraordinary and compelling reasons" in Application Note 1 to United States Sentencing Guidelines Section 1B1.13 to include, in relevant part, "[t]he death or incapacitation of the caregiver of the defendant's . . . minor children[,]" and other extraordinary and compelling reasons that exist but are not listed in the note. U.S. Sentencing Guidelines Manual § 1B1.13, app. 1(C)(i), (D). The Court finds guidance in BOP Program Statement § 5050.50, a set of internal criteria the BOP uses to address prisoner requests for compassionate release. *See* BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf; *see also United States v. Gutierrez*, No. CDR 05-0217 RB, 2019 WL 2422601, at *3 (D.N.M. June 10, 2019); *United States v. Jordan*, No. 3:16-CR-92-J-39PDB, 2020 WL 1640097, at *3 (M.D. Fla. Apr. 2, 2020) (examining BOP Program Statement 5050.50 § 3(b)). Several of the criteria are relevant to the Court's decision.

4

First, in reviewing a request for release due to the death or incapacitation of a family member caregiver, an inmate must provide the warden with "[a] statement that this person was the **only** family member capable of caring for the inmate's child." BOP Program Statement § 5050.50(5)(a) (emphasis added). Here, the Government points out that if Mr. Perez is physically unable to care for the children, Ms. Rivera has a mother and three siblings, all of whom live in New Mexico. (*See* Docs. 53 at 12; 47-1 ¶ 69.) It appears Ms. Rivera's 27-year-old son may also be able to care for his younger siblings. Although he had brain surgery in 2015, he was employed as a department manager at Wal-Mart at the time of the PSR.[2] (See Doc. 47-1 ¶ 73.) Ms. Rivera, through counsel, states that her mother suffers from hypertension, diabetes, and lupus; her sister already has two children to care for (one with an autism diagnosis); and her brothers are uninterested and/or unable to care for the children. (Doc. 56 at 2.) The Court finds that without medical verification of the mother's incapacity and further evidence regarding the son's and siblings' ability to care for the children, Ms. Rivera has not carried her burden to show that she is the only available caregiver.

The warden also considers whether the inmate committed violent acts before or during incarceration. BOP Program Statement § 5050.50(5)(b). Ms. Rivera has reported that her relationship with Mr. Perez was "violent" and abusive. (Doc. 47-1 ¶ 74 & at 22.) Moreover, the PSR lists multiple instances of disturbances and altercations between Ms. Rivera, Mr. Perez, and two of her sons. (*See id.* ¶¶ 39–58.) It appears that Ms. Rivera wishes to reside in Mr. Perez's home. The United States Probation Office (USPO) submitted a Memorandum in this matter on December 21, 2021, and states that although Mr. Perez "is willing to have the defendant return to the home, there are concerns that she has not resided there in approximately 7 years and when she

---

[2] Ms. Rivera's assertion in her request to the warden that her 27-year-old son "requires full time care" is dubious. (Doc. 38 at 11.)

was last there the family dynamics were volatile." (Doc. 57 at 2.) The USPO does not believe Ms. Rivera's proposed placement is suitable. (*See id.*) The Court agrees that given the family's history of domestic violence and Ms. Rivera's criminal history, together with Ms. Rivera's failure to explain how she will financially provide for her children, the Court does not find on this record that she is ready to provide her children with a stable home environment.

Finally, the warden considers whether the inmate had drugs, drug paraphernalia, firearms, or other dangerous substances in the home while caring for the child. BOP Program Statement § 5050.50(5)(b). Ms. Rivera reported "an extensive history of methamphetamine use" and "reported regular use of the drug until the date of the instant offense." (*Id.* ¶ 78.) The charges here were based on Ms. Rivera's conduct in possession with intent to distribute methamphetamine and the seizure of more methamphetamine from her house, presumably the home she shared with her children. (*See id.* ¶¶ 9–12.) In short, the Court finds that the relevant factors weigh against a grant of early release in this case.

Ms. Rivera compares these circumstances to several out-of-district cases in which courts granted compassionate release. (*Id.* at 7–8.) In all but one of the cases she relies on, the courts explicitly found that the inmate was the only available caregiver for a family member. *See United States v. Thompson*, No. 3:17-CR-170-CHB, 2021 WL 2418573, at *3–4 (W.D. Ky. June 14, 2021) (granting compassionate release to inmate whose elderly mother could no longer care for the inmate's minor children and infant grandchild); *United States v. Griffin*, No. 1:95-CR-00751-UU-1, 2020 WL 7295765, at *3 (S.D. Fla. Dec. 8, 2020) (inmate was "the only viable, adequate caregiver for his sister" with special needs); *United States v. Quinones Rodriguez*, No. 5:13CR30, 2020 WL 5045203, at *3 (W.D. Va. Aug. 26, 2020) (the caregiver of the inmate's children was incapacitated such that his children were in foster care); *United States v. Hansen*, No. 17 CR 50062,

6

2020 WL 2219068, at *2 (N.D. Ill. May 7, 2020) (inmate's wife suffered from "serious liver disease that has impaired her immune system"); *but see United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019) (granting compassionate release to inmate in part to care for his terminally ill mother, but court did not make a finding that inmate was the only available caregiver). Again, however, the Court finds that Ms. Rivera has not met her burden to show that she is the only person available to care for her children.

In short, because the USPO found that Mr. Perez is "stable" and because Ms. Rivera fails to establish that she is the only family member who can serve as caregiver for her minor children, she has not established that extraordinary and compelling circumstances exist for compassionate release.

In addition to finding that an extraordinary and compelling reason exists for a sentence reduction, § 1B1.13 directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable" and whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines § 1B1.13 & (2).

Section 3553 requires courts to "impose a sentence sufficient, but not greater than necessary," in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142 requires courts to consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

Here, Ms. Rivera was convicted of drug trafficking crimes and admitted to a long history of drug use. (*See* Doc. 47-1 ¶ 21 and at 23.) She has a considerable criminal history dating back to 2003, including receipt or transfer of a stolen vehicle, fraudulent use of a credit card, and forgery/identity theft, resulting in a criminal history category of IV. (*Id.* ¶¶ 33–38.) And as discussed above, she had numerous encounters with law enforcement due to domestic altercations with Mr. Perez and her sons, some of which involved violence on Ms. Rivera's part. (*See id.* ¶¶ 39–58.)

Ms. Rivera asserts that she has made positive changes while incarcerated by becoming sober, completing courses, and working. (*See* Doc. 47 at 14; *see also* Doc. 38 at 17–18.) The Court commends Ms. Rivera on improving her life and character and encourages her to continue working toward a successful transition. The Court also encourages Ms. Rivera to engage in substance abuse counseling and to continue to build healthy, positive relationships with her children during the remaining time she is in prison. At this time, however, the Court finds that the § 3553(a) factors counsel against a sentence reduction in this case.

**THEREFORE**,

**IT IS ORDERED** that Ms. Rivera's Motions for Compassionate Release (Docs. 38; 47) are **DISMISSED** in part and **DENIED** in part.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE